IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHARLEE'S CANDIES, LLC,

Plaintiff,

v.

WOODBURN PREMIUM OUTLETS, LLC,

Defendant.

Case No. 6:26-cv-00100-AP

**OPINION & ORDER**

POTTER, United States Magistrate Judge:

Plaintiff Charlee's Candies alleges that Defendant Woodburn Premium Outlets fraudulently induced them to sign a lease agreement for retail space at Defendant's property and seeks rescission of the contract. Second Amend. Compl., ECF No. 32 (SAC). Defendant moves to dismiss. Def.'s Mot. Dismiss, ECF No. 40. Defendant also moves to strike Plaintiff's demand for a jury trial. Def.'s Mot. Strike, ECF No. 22.

All parties have consented to jurisdiction by a U.S. Magistrate Judge. ECF No. 13. Because Plaintiff has sufficiently pled a claim for rescission based on fraud, Defendant's Motion to Dismiss (ECF No. 40) is DENIED. Because Plaintiff waived their right to a jury trial, Defendant's Motion to Strike (ECF No. 22) is GRANTED.

**BACKGROUND**

According to the Second Amended Complaint, Plaintiff operates a specialty food store at Woodburn Premium Outlets. SAC ¶¶ 1, 4.

Plaintiff first began looking for retail space for their store in September 2023. SAC ¶ 5. Plaintiff engaged in negotiations with Defendant's leasing representative regarding a space at Woodburn and the associated rent and other fees. SAC ¶¶ 13–25.

Plaintiff specifically asked for the annual customer count at Woodburn as well as sales data for certain representative stores at the mall during the negotiations. SAC ¶¶ 17, 21. Defendant's representative told Plaintiff that Woodburn saw 4-5 million customers annually. SAC ¶ 17. Defendant's representative also gave sales data for some representative stores but told Plaintiff that, for one specialty foods store that was at the back of the mall like Plaintiff's store would be, there was no sales data because they were a new tenant. SAC ¶¶ 21, 22, 23.

After consulting with the franchisor, Plaintiff moved forward and signed a lease in December 2023. SAC ¶ 26. However, Plaintiff's sales have been lower than expected. SAC ¶ 27.

Plaintiff later learned that the specialty foods store had not in fact been a new tenant in September 2023 and that the sales data they had requested was not only available but would have shown that the store had much lower average sales than the tenant average Defendant reported. SAC ¶¶ 28, 29.

Plaintiff then conducted their own measurements of customers and determined that Woodburn only saw 3.2 million customers in 2024. SAC ¶ 31.

Plaintiff alleges that they never would have entered into the lease if they had known the true sales data and annual customer count. SAC ¶ 34.

Plaintiff brings a sole claim for rescission based on fraud in the inducement. SAC ¶¶ 43–50. Plaintiff seeks restitution and punitive damages. SAC ¶¶ 51–53.

## STANDARDS

Under Rule 8(a)(2), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court must accept all well-pleaded, material factual allegations and construe them in the light most favorable to the non-moving party. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1240 (9th Cir. 2023). The court need not accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

### I. Motion to Dismiss

Defendant argues that Plaintiff's Second Amended Complaint fails to state a claim and should be dismissed in its entirety. Def.'s Mot. Dismiss 4–10. In the alternative, Defendant asks the Court to strike some of the types of damages that Plaintiff seeks. Def.'s Mot. Dismiss 10–16.

#### *A. Fraud*

Defendant first argues that Plaintiff has failed to plead a claim for fraud because the alleged misrepresentations are not actionable. Def.'s Mot. Dismiss 4–7.

A claim for fraud under Oregon law requires a Plaintiff to show (1) Defendant made a false misrepresentation of material fact; (2) Defendant either knew the representation was false or had "an insufficient basis for asserting its truth;" (3) Defendant intended that Plaintiff rely on the misrepresentation; (4) "Plaintiff[] justifiably relied on [the] misrepresentation;" and (5)

Plaintiff suffered damages as a result." *In re Harris Pine Mills*, 44 F.3d 1431, 1439 (9th Cir. 1995) (citing *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 737 P.2d 595, 604 (Or. 1987).

Plaintiff identified two alleged misrepresentations. Defendant's agent told Plaintiff that "the annual customer count for the Woodburn Premium Outlets is 4 to 5 million annually." SAC ¶ 17. Plaintiff asked for sales data from one particular store and Defendant's agent told Plaintiff "there was so sales data available for it due to it being a new tenant." SAC ¶ 23.

Defendant argues that because Plaintiff used these alleged misrepresentations to make a prediction of future visitor counts, there is no actionable fraud. Def.'s Mot. Dismiss 4. "Defendant made no guarantee that any such results would be obtained." *Id.*

A claim for fraud cannot be based on "erroneous predictions of the future conduct of independent third parties." *Whitlatch v. Bertagnolli*, 609 P.2d 902, 905 (Or. Ct. App. 1980). However, Defendant conflates a prediction made by a party in order to induce a transaction—which would not be actionable—with the induced party's own prediction based on specific material facts. *Cf. id.* (holding that plaintiffs sufficiently pled a claim for fraud when they alleged that defendants withheld "a present fact which misrepresented to plaintiffs the value of the subject property").

Plaintiff alleges that Defendant's agent made two false representations of material fact with either the knowledge that the statements were false or with an insufficient basis to assert that they were true. SAC ¶¶ 17, 23, 28–29, 31–33. These representations were made with the intent that Plaintiff rely on them. Plaintiff did indeed rely on them. SAC ¶ 24. And Plaintiff alleges that they suffered damages as a result. SAC ¶ 34.

Defendant argues that Plaintiff's reliance was not justified because Plaintiff had commercial realtor, franchisor, and real estate attorney advising them. Def.'s Mot. Dismiss 6

(citing *Kaufman Inv. Corp. v. Johnson*, 623 F.2d 598, 601 (9th Cir. 1980)). In *Kaufman*, the court found that there was no justifiable reliance because there was no reliance on the representations at all. *Id.* ("A letter from the purchaser's attorney clearly indicates that the purchaser was negotiating on the basis of its own agent's evaluation of the property and not on the appellee's representations."). That is not this case.

Here the advice Plaintiff received from their commercial realtor, franchisor, and real estate attorney was premised on the very data that Plaintiff received from Defendant. *See, e.g.,* SAC ¶ 18 ("Directly following [the representation of annual visitors], Franchisor recommended pursuing Defendant's available space, stating in an email: 'Those are strong numbers. Are there vacancies? If so, let's go down this road.'"). The underlying data, therefore, could support a claim for fraud in the inducement.

Plaintiff has sufficiently pled a claim for fraud.

### *B. Timely Rescission*

Defendant next argues that Plaintiff cannot maintain a claim for rescission because they did not timely rescind the contract.

In Oregon, a claim for rescission "must be brought promptly after the plaintiff has knowledge of the facts constituting the grounds for rescission." *Engelking v. Field*, 522 P.2d 493, 496 (Or. 1974). "Any delay . . ., especially [by] remaining in possession of the property[,] will evidence [a plaintiff's] intention to ratify and abide by the contract." *Edwards v. Wilcoxen*, 562 P.2d 1207, 1209 (Or. 1977) (quoting *Cooper v. Hillsboro Garden Tracts*, 152 P. 488 (Or. 1915)).

Defendant asserts that Plaintiff knew of Defendant's alleged misrepresentations as early as March 2025, when Plaintiff alleges that they learned that "Similar Tenant B" was not a new tenant. Def.'s Mot. Dismiss 8 (citing SAC ¶ 28). By contrast, Plaintiff alleges that they did not

truly know the scope of the misrepresentations until October and November of 2025. Pl.'s Resp. Dismiss 9, ECF No. 41; SAC ¶¶ 29, 31. Plaintiff then filed suit in December 2025. Notice Removal, ECF No. 1.

When Plaintiff knew of the alleged misrepresentations is a question of fact. At this stage in the litigation, Plaintiff has sufficiently pleaded a claim for rescission.

### *C. Damages*

Finally, Defendant argues that most of the damages Plaintiff seeks are not available for claims in equity. Def.'s Mot. Dismiss 10–16. Plaintiff argues that it is premature to dismiss damages. Pl.'s Resp. Dismiss 10–14. The Court agrees and declines to limit Plaintiff's damages at this time.

The Court does note that Plaintiff brings a sole claim for rescission based on fraud in the inducement. SAC ¶¶ 43–50. Plaintiff seeks restitution and reasonable expenditures as well as punitive damages. SAC ¶¶ 51, 53.

"Restitution is based on the theory that one party should not be unjustly enriched at the expense of another." *Farmer v. Groves*, 555 P.2d 1252, 1256 (Or. 1976). "In the case of a rescission plaintiffs are entitled to be returned to the status quo and to recover the payments made on the contract less the fair rental value of the premises for the time they had possession thereof." *Id.* at 1255. To recover any additional expenditures, Plaintiff "must show that the improvements enhanced the value of the property." *Id.* at 1256.

## II. Jury Trial

The Seventh Amendment guarantees the right to a jury trial "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. Like other constitutional rights, the right to a trial by jury can be waived. *Consumer Fin. Prot. Bureau v.*

*CashCall, Inc.*, 135 F.4th 683, 689 (9th Cir. 2025). "'Because the right to a jury trial is a fundamental right guaranteed to our citizenry by the Constitution,' however, 'courts should indulge every reasonable presumption against waiver.'" *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 953 (9th Cir. 2008) (quoting *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981)).

"To be valid, a waiver 'must be made knowingly and voluntarily based on the facts of the case.'" *Consumer Fin. Prot. Bureau*, 135 F.4th at 689 (quoting *Palmer v. Valdez*, 560 F.3d 965, 968 (9th Cir. 2009)). When, like here, jurisdiction is based on diversity of citizenship, Oregon substantive law and federal procedural law governs the question of whether a jury trial waiver is enforceable. *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 39 F.4th 1113, 1118 (9th Cir. 2022) (internal citations omitted).

The parties agree that the lease agreement contained a waiver of the right to a jury trial. Defendant argues that Plaintiff knowingly and voluntarily agreed to that jury trial waiver. Def.'s Mot. Strike 3. Plaintiff does not argue that the jury trial waiver was not knowingly and voluntarily agreed to. Instead, Plaintiff argues that because they were fraudulently induced into signing the contract, the entire contract is void, including the jury trial waiver. Pl.'s Resp. Strike 1, ECF No. 25.

Under federal law, "general allegations of fraudulent inducement in connection with a contract that includes a jury waiver provision—but not directed at the jury waiver provision itself—are insufficient to negate an otherwise valid waiver." *Aventa Learning, Inc. v. K12, Inc.*, No. C10-1022JLR, 2011 WL 13100747, at *4 (W.D. Wash. Nov. 8, 2011) (citing *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) (holding that "unless a party alleges that its agreement to waive its right to a jury trial was itself induced by fraud, the party's contractual waiver is enforceable vis-à-vis an allegation of fraudulent inducement

relating to the contract as a whole.")); *see also MFY Funding LLC v. Ohia Opportunities, LLC*, No. 21-CV-00261-DKW-KJM, 2021 WL 3909658, at *8 (D. Haw. Aug. 31, 2021) (same).

Plaintiff does not dispute this principle but asserts that "Oregon law regarding jury trial waivers is more protective than the federal knowing and voluntary rule." Pl.'s Resp. Strike 2–3.

"[F]ederal courts sitting in diversity must apply the relevant state law to evaluate the validity of a pre-dispute jury trial waiver when that law is more protective than federal law." *In re Cnty. of Orange*, 784 F.3d 520, 531–32 (9th Cir. 2015) (finding that California state law, under which "a litigant cannot waive its right to a jury trial by entering into a contract that contains a pre-dispute jury trial waiver clause," is more protective). "Like federal law, Oregon law permits a party to waive its constitutional right to a jury trial by knowing and voluntary agreement." *Ross Dress for Less, Inc.*, 39 F.4th at 1118 (internal citations omitted); *accord Carrier v. Hicks*, 851 P.2d 581, 587 (Or. 1993); *Molodyh v. Truck Ins. Exch.*, 714 P.2d 257, 259 (Or. Ct. App. 1986) ("The right is not absolute, however, and may be waived by the consent of the contracting parties.").

Despite adopting the same standard for evaluating whether a jury trial waiver is valid, Plaintiff's contends that "Oregon law does not allow partial rescission of a contract." Pl's Resp. Strike 3 (citing *Gearhart v. Goehner*, 701 P.2d 461, 466 (Or. Ct. App. 1985)). And, as such, argues that this Court should treat the entire contract—including the jury waiver—as void. But this would result in any allegation of fraud—even if it is not related to the provision at issue—being sufficient to void any provision of a contract under Oregon law. The Court is not aware of any Oregon decision that addresses this precise question or compels the result that Plaintiff seeks.

The Oregon Supreme Court has explained the difference between fraud in inducement and fraud in the execution and the impact of each allegation on a contract. *Lupton v. Bangs*, 242 P. 830, 831 (Or. 1926). A person can be induced by fraud when he "assent[s] to something which he would not otherwise have done." *Id.* (citing 3 Williston on Contracts § 1488). In that case, the "the act of the defrauded person is effectual, though voidable." *Id.* This is distinct from fraud that causes a person to believe "that the act which he does is something other than it actually is" rendering "the act of the defrauded person [] void." *Id.* Here, the allegation is the former not the latter. And at least one court has relied on the distinction in *Lupton* to conclude that if a party was fraudulently induced into signing a contract, "the contract is merely voidable, and the arbitration clause in such a contract must be enforced." *Black Rock Coffee Bar, LLC v. BR Coffee, LLC*, No. 3:20-CV-976-SI, 2020 WL 4728877, at *4 (D. Or. Aug. 14, 2020) (considering the question under both Oregon and California law).

This case involves a jury waiver not an arbitration agreement. But in the absence of specific case law on jury waivers, the Tenth Circuit analyzed cases involving the impact of allegations of fraud in the inducement on arbitration provisions before concluding that a jury waiver, like an arbitration agreement, was enforceable absent an allegation that the jury waiver itself was induced by fraud. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (noting that the parties had not cited any federal law on this issue). The Tenth Circuit concluded this was an appropriate analogy "because submission of a case to arbitration involves a greater compromise of procedural protections than does the waiver of the right to trial by jury." *Id.* at 838; *see also Merrill Lynch & Co. Inc.*, 500 F.3d at 188 ("A promise to bring proceedings before a judge, not a jury, is akin to an agreement to arbitrate in that both express the parties' consent as to how to handle differences that may arise. Indeed, arbitration represents a more

dramatic departure from the judicial forum than does a bench trial from a jury trial.”). The Court agrees this is an appropriate analogy and finds the *Black Rock* case persuasive.

Absent a claim that fraud induced the jury trial waiver, Oregon law does not prohibit enforcement of a jury waiver in a fraud in the inducement case. *Cf. Teegarden v. State ex rel. Oregon Youth Auth.*, 348 P.3d 273, 278 (Or. Ct. App. 2015) (“A contract may be avoided on the basis of fraudulent representations in the inducement despite a disclaimer clause where the fraud complained of vitiates the entire transaction, including the disclaimer clause.”). A contrary result would “make[] it too easy for a litigant to avoid its contractual promise to submit a case to a judge by alleging fraud.” *Merrill Lynch & Co. Inc.*, 500 F.3d at 188.

The question here is whether the jury waiver was knowing and voluntary and the Court concludes it was. Plaintiff’s waiver of any right[1] to a jury trial is valid.

**CONCLUSION**

Defendant’s Motion to Dismiss (ECF No. 40) is DENIED. Defendant’s Motion to Strike (ECF No. 22) is GRANTED.

IT IS SO ORDERED.

DATED this 25th day of September, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge

[1] Plaintiff’s sole claim for rescission of the contract is an equitable claim. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) ("Rescission is an equitable remedy, however, for which no right to a jury exists."); *accord Venture Props., Inc. v. Parker*, 195 P.3d 470, 483 (Or. Ct. App. 2008) (“plaintiff's rescission claims are equitable in nature”).